**Jane DOE, Plaintiff,**

v.

**Valerie LEE, etc., et al., Defendants.**

No. 01–T–940–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 6, 2001.

Kerri P. Parker, Bessemer, AL, Artur G. Davis, The Law Office of Artur Davis, Birmingham, AL, for Jane Doe.

M. Roland Nachman, Jr., B. Saxon Main, Steiner–Crum, Byars & Main, PC, Thomas T. Gallion, III, Haskett, Slaughter, Young & Rediker, LLC, Fred Frank Bell, Office of the Attorney General, Montgomery, AL, for Valerie Lee, the Family Court of Montgomery County, Juvenile Division, Fifteenth Judicial Circuit, Montgomery County.

## ORDER

MYRON H. THOMPSON, District Judge.

This case arises out of the alleged disclosure of confidential psychological records of the plaintiff, Jane Doe, by the defendant, Valerie Lee, a psychologist employed with the Family Court of Montgomery County. Doe is the adult daughter of a Montgomery lawyer who ran unsuccessfully for judicial office. Doe alleges that Lee, who was associated with the successful candidate's campaign, disclosed the records in violation of Doe's federally protected right to privacy. Doe seeks to invoke the jurisdiction of the court under 28 U.S.C.A. § 1331, 28 U.S.C.A. § 1343, and 42 U.S.C.A. § 1983. The matter is now before the court on Doe's motion to disqualify Lee's attorney, Roland Nachman, on grounds of a conflict of interest under Rule 1.7 of the Alabama Rules of Professional Conduct. Roland Nachman is married to a potential witness in the case. For the following reasons, the court will deny Doe's motion to disqualify Nachman.

## I. BACKGROUND

The conflict of interest alleged by Doe arises from a telephone call between the successful judicial candidate and a local radio personality. Doe claims that during this call, which was allegedly overheard by Doe's mother's husband, the successful candidate freely discussed Doe's juvenile counseling record and made a number of derogatory references to the contents of the record. The candidate allegedly encouraged the radio personality to contact either Valerie Lee or Martha Nachman if she needed additional information or corroboration of the record's contents. The candidate then allegedly provided the radio personality with a telephone number that belongs to either Valerie Lee or Martha Nachman. Doe asserts that Lee, as a psychologist with the Family Court, had interviewed Doe in connection with an incident during Doe's adolescence, and had been the custodian of Doe's entire counseling file, which includes a variety of medical and psychological records. Doe also as-

serts that Martha Nachman is a Montgomery resident who played an active role in the successful candidate's campaign. Finally, Doe claims that her mother's husband spoke to a third unnamed local political activist who told him that she had reviewed documents that appeared to have been generated from Doe's juvenile counseling file, and that she had been told that the records came from individuals affiliated with the successful candidate's campaign.

Shortly after Roland Nachman filed a motion to dismiss on behalf of Valerie Lee, Doe's counsel notified Nachman that he believed Nachman's representation of Lee could be compromised by a potential conflict of interest, since Nachman's wife would likely be a material witness. After Nachman notified Doe's counsel that he would not withdraw as Lee's attorney, Doe's counsel filed this motion to disqualify Nachman. In his response in opposition to the motion to disqualify, Nachman argues that there is no basis to disqualify an attorney because of a spousal relationship between counsel for one party and a potential witness, particularly when there is no conflict between that party and the potential witness. Nachman's response incorporates Lee's previously-filed affidavit asserting the falsity of all of Doe's allegations.

## II. DISCUSSION

In basing her motion to disqualify Lee's attorney on an alleged conflict of interest,

Doe does not and cannot rely on any explicit prohibition against an attorney's representation of a client when a potential witness in the case is married to the attorney. Likewise, the court has been unable to find any state or federal cases in which a party argued that this situation raised an actual or potential conflict. However, Doe argues by way of analogy that disqualification is warranted because Nachman's representation of Lee generates a conflict of interest between his allegiance to his client and his allegiance to his wife. This conflict is similar to that which would arise if his wife were his former client, with interests adverse to his current client's. There are explicit ethical and legal prohibitions against an attorney's representation of a client when the present client's interests are directly adverse to the attorney's former client's interests. These prohibitions are grounded in two rationales: first, that such representation would be unfair to the former and present clients, and second, that it would infect the entire legal proceeding with unfairness in general.

To strengthen her analogy to the conflict generated by representation of competing interests, Doe relies on section (b) of Rule 1.7 of the Alabama Rules of Professional Conduct. This section precludes a lawyer from representing a client if that representation "may be materially limited by the lawyer's responsibilities to another client or a third person." [1] Doe argues

---

1. The complete text of Rule 1.7 of the Alabama Rules of Professional Conduct, Conflict of Interest: General Rule, is as follows:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) Each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or a third person, or by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consulta-

that Roland Nachman's representation of Valerie Lee will be materially limited by his responsibilities to a third party, his wife. Given the special legal significance accorded to the marital relationship, paralleling or even exceeding that of the attorney-client relationship, Doe argues, there is a strong possibility that Roland Nachman will be unable to afford full loyalty to his client because his loyalty to his wife will interfere. Doe suggests that this dual loyalty will be manifested in two main ways: Roland Nachman will be unable to vigorously "cross-examine" Martha Nachman, and his judgments and recommendations to his client will be limited by his presumed desire to avoid liability for his wife.

 First, Doe's argument raises concerns of standing. To satisfy the constitutional minimum requirements for standing, a litigant must show (1) that he or she personally has suffered an injury in fact, defined as an invasion of a legally protected interest which is concrete and particularized and actual or imminent; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed through a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992); *see also Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987). Moreover, the party invoking federal jurisdiction bears the burden of proving these elements. *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136. Thus, Doe must show that she has standing to raise the issue of Lee's attorney's actual or potential conflict of interest. However, "[a]s a gen-

eral rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *In re Yarn Processing Patent Validity Litg.*, 530 F.2d 83, 88 (5th Cir. 1976) (citations omitted).[2]

Doe argues that, in accordance with the commentary to Rule 1.7, opposing counsel may properly raise the question of conflict where "the conflict is such as clearly to call in question the fair or efficient administration of justice." Doe further argues that she is entitled to identify a conflict that could threaten the validity of any trial judgment that she obtained. Consistent with Doe's position, some federal courts have permitted opposing counsel to raise conflict of interest concerns on the basis of the courts' power to control the conduct of attorneys practicing before them, as well as the ethical codes of the profession. *See Colyer v. Smith*, 50 F.Supp.2d 966 (C.D.Cal.1999) (examining different approaches to standing, but holding that party objecting to opposing counsel's conflict of interest did not demonstrate sufficiently concrete and particularized injury to satisfy standing requirements). These courts locate authority for such "rules-based standing" in ethical codes with language similar to the Alabama Rules commentary, such as the Model Code of Professional Responsibility and the Model Rules of Professional Conduct. *See Colyer*, 50 F.Supp.2d at 970.

Notwithstanding the commentary upon which Doe relies, however, Alabama law disfavors the disqualification of an attorney for a conflict of interest when anyone other than the former or current client raises the issue. *Riley v. Bradley*, 252

tion shall include explanation of the implications of the common representation and the advantages and risks involved.

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Ala. 282, 41 So.2d 641 (1948); *Lowe v. Graves,* 404 So.2d 652 (Ala.1981). In *Riley v. Bradley,* the Alabama Supreme Court held in the context of a dispute between beneficiaries of a trust that "the principle seems to be fully established that only a party who sustains the relation to client to an attorney, who undertakes to represent conflicting interests, may be entitled to object to such representation for that reason alone." *Riley,* 41 So.2d at 644. The same principle was used to decide a motion for disqualification in *Lowe v. Graves,* where the plaintiff complained of her opposing counsel's conflict of interest in representing the defendant due to the fact that he had formerly represented another client in a related matter, but the plaintiff herself had no former or present attorney-client relationship with the defendant's counsel.

An important rationale for this disapproval is the possibility that counsel may allege a conflict of interest in order to harass the other side or delay the litigation. This rationale was expressed by the former Fifth Circuit in *Yarn Processing* and relied on by the Alabama Supreme Court in *Lowe,* which cited the Fifth Circuit's reluctance to permit the opposing party to act as a "surrogate" to "champion the rights of the former client ... where the party receiving such an advantage has no right of his own which is invaded." *Lowe,* 404 So.2d at 653–654 (citing *Yarn Processing,* 530 F.2d at 90).

■ While there is no reason to assume that such improper purposes are the motivation here, there is also no "manifest or glaring" ethical violation that would obviously grant Doe standing as an officer of the court to obtain the disqualification of opposing counsel. Doe has raised the speculative possibility that Roland Nachman's loyalties will be split, but at this point there is no evidence to suggest that Martha Nachman and Valerie Lee's positions are in conflict at all. Doe must make a more concrete showing that she is actually or will be imminently injured by the conflict she alleges, and she has not done so. As the district court held in *Colyer,* "[t]he standing requirement protects against the strategic exploitation of the rules of ethics long disfavored by the Courts." *Colyer,* 50 F.Supp.2d at 973.

First, there is no actual injury posed by Doe's allegation that she will be injured by Roland Nachman's possible inability to vigorously "cross-examine" his wife. Doe herself will have an unfettered right to "cross-examine" Martha Nachman both in depositions and at trial. Whether (and how) Roland Nachman chooses to question her does not infringe upon Doe's right to do so. In addition, Doe's claim that Roland Nachman may be unwilling to counsel his client to settle the lawsuit cannot qualify as an injury in fact. As the district court held in *Colyer,* an opposing party's "abstract interest in winning or losing [the] litigation is not legally cognizable. All plaintiffs have a stake in winning the cases they file, but this tactical 'interest' cannot independently satisfy Article III." *Colyer,* 50 F.Supp.2d at 973. Finally, Doe's complaint that she will not be able to plausibly pursue Martha Nachman's cooperation against Lee or other county officials, even if true, is not an injury that the court could redress through disqualification. A party is never assured of the cooperation of any witness, whether or not she has a connection to the other party's attorney. Thus, Doe's generalized claim is not sufficient to meet the constitutional standing requirements articulated in *Lujan.* While there may be some situations in which a conflict so clearly calls into question the "fair or efficient administration of justice" as to permit opposing coun-

sel to raise the claim, this situation does not rise to that level.

Even if Doe were able to satisfy the constitutional standing requirements, her argument fails to address the fact that this is a civil case, and the willingness of courts to disturb the constitutional presumption that parties should be free to choose their own attorneys is generally predicated on the sixth amendment right to the effective assistance of counsel in criminal cases. For example, in *Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 1700, 100 L.Ed.2d 140 (1988), cited by Doe in support of her claim, the Supreme Court held that although district courts must recognize the sixth amendment presumption in favor of the defendant's counsel of choice, that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. Key to the Court's reasoning was its statement that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697. The Court has made no similar pronouncement on the essential aim of the seventh amendment. This court is unwilling to import the constitutional analysis of criminal cases into the civil context, especially when to do so would contravene binding Fifth Circuit and Alabama state law precedent. Absent more clear and convincing evidence of conflict in Nachman's representation of Lee, the court is not willing to abrogate Lee's freedom to choose her attorney at this point in the litigation.

## III. CONCLUSION

For the foregoing reasons, it is OR-DERED that the motion to disqualify counsel, etc., filed by plaintiff Jane Doe on October 25, 2001, is denied.